UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES E. JUSTISE, SR., <br><br> Plaintiff, <br><br> v. <br><br> WARDEN, <br><br> Defendant. | CAUSE NO. 3:20-CV-514 DRL-MGG |

OPINION & ORDER

Charles E. Justise, Sr., a prisoner without a lawyer, filed a motion for preliminary injunction and was granted leave to proceed on claims concerning his treatment for diabetes and the diet he is provided at Miami Correctional Facility. ECF 2, 5. The Warden has responded, and Mr. Justise has replied. ECF 13, 26.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). A "mere possibility of success [on the merits] is not enough," but an applicant for preliminary relief "need not show that it definitely will win the case." *Ill. Repub. Party v. Pritz*ker, 973 F.3d 760, 762-63 (7th Cir. 2020). A strong showing of a likelihood of success on the merits "normally includes a

demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763.

Mr. Justise has diabetes. ECF 13-13 at 1. His treatment requires several shots of insulin a day to regulate his blood sugar. ECF 13-10 at ¶ 7. Currently, Mr. Justise is treated with NPH and R insulins. *Id.* He asks that this court order the prison to switch him to different insulins, specifically Lantus and Humalog. Under the Prison Litigation Reform Act, injunctive relief must be "narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (quotation marks and citation omitted). If the court were to find that Mr. Justise was not being provided constitutionally adequate medical care, the court would order only that he be provided with constitutionally adequate medical care, which does not necessarily entail Lantus and Humalog.

Mr. Justise argues that NPH and R are ineffective at controlling his diabetes and continuing this course of treatment violates the Eighth Amendment. "[T]he Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Prisoners are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). At the same time, prison officials may not continue "a course of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016).

Mr. Justise asserts that, in an effort to prove that NPH and R are ineffective for him, he complied with all the prison's insulin orders from mid-April 2019 through the

2

filing of this motion in June 2020 and yet his blood sugars remained high. ECF 2-1 at 2. Mr. Justise's compliance during this period is undisputed; all the documented refusals of insulin occur before this time period. ECF 13-4 at ¶¶ 6, 9-14, 17-19. However, the record shows that at Mr. Justise's periodic Chronic Care Visits, his dosage of NPH was increased several times, and at the same time Mr. Justise's A1C decreased from 8.8% in October 2019 to 7.6% in November 2019 to 7.4% in January 2020, though it did rise to 8.2% in April 2020.[1] ECF 13-10 at ¶ 13; 13-13; 13-14; 13-15; 13-21.

These records demonstrate that Mr. Justise is receiving treatment for his diabetes, and nothing suggests this course of treatment "departed . . . radically from accepted professional judgment, practice or standards." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016) (quotation marks and citation omitted). The American Diabetes Association suggests "[a] reasonable A1C goal for many nonpregnant adults is <7%" but also allows that "[l]ess stringent A1C goals (such as <8% . . .) may be appropriate" in some circumstances, including for patients with "long-standing diabetes in whom the goal is difficult to achieve despite diabetes self-management education,

---

[1] The court declines to consider the details Mr. Justise includes in his reply brief that occurred after the Warden filed a response five months earlier. *Cf. Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968-69 (7th Cir. 2020) ("District courts abuse their discretion when they deny a party a chance to respond to new arguments or facts raised for the first time in a reply brief in support of a motion for summary judgment and subsequently enter judgment on the basis of those new arguments or facts."). Specifically, Mr. Justise states that his A1C is currently 9.8%. ECF 26 at 3. Assuming that unsupported statement is true, an A1C value is meaningless without the accompanying treatment history when evaluating whether the course of treatment constitutes deliberate indifference. *See Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment.").

appropriate glucose monitoring, and effective doses of multiple glucose-lowering agents including insulin." American Diabetes Association, *Glycemic Targets: Standards of Medical Care in Diabetes — 2019*, 42 DIABETES CARE (Supplement 1) S61 (Jan. 2019), https://care.diabetesjournals.org/content/42/Supplement_1/S61.

Mr. Justise lists five instances in July and August 2020 when he received a double dose of R insulin due to an earlier missed dose and yet his blood sugar remained high. ECF 26 at 14. Five instances over many hundreds of doses do not show a pattern sufficient to demonstrate a radical departure from accepted professional practice. Mr. Justise further asserts the sheer volume of insulin he receives—more than 300 units a day—demonstrates his treatment is ineffective. But he points to no evidence establishing such a bright-line rule.

Mr. Justise next claims that he is allergic to R insulin. It is undisputed that Mr. Justise experiences a rash at his injection site. The cause of the rash, however, is in dispute. Mr. Justise insists it is from an allergy to R insulin, and he points to an after-visit summary from an outside hospital, which listed that he is allergic to "Insulin Regular Human" with "Itching" as the reaction. ECF 26-1 at Ex. D. The prison physician, however, states that the rash is due to insulin building up near the surface of the skin because of the large amount of insulin Mr. Justise receives per injection. ECF 13-10 at ¶15. The physician prescribed Loratadine for "Rash at regular insulin injection sites." ECF 13-17. Loratadine is an oral antihistamine that is used to alleviate itchiness. ECF 13-10 at ¶ 17.

This is a dispute over the cause and treatment of the rash. A mere disagreement with medical professionals about the appropriate course of treatment does not establish

4

an Eighth Amendment violation. *See Snipes*, 95 F.3d at 591. If a prisoner is receiving some care, that is sufficient unless "the treatment rendered [is] so blatantly inappropriate that it can support an inference of intentional mistreatment." *Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017). Here, the prison medical staff has determined that the rash can be adequately treated with an antihistamine and does not require a change in insulin. Mr. Justise argues other doctors told him he is allergic to R and have prescribed him Humalog and Lantus in the past. ECF 26-1 at Ex. D. But "evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Even if Mr. Justise is allergic to something in R insulin, there is no evidence that treating the localized reaction with Loratadine is a radical departure from accepted professional standards.

Turning to his diet, the record shows that Mr. Justise is receiving a 2200-calorie diabetic meal with an additional diabetic snack. ECF 13-16. Mr. Justise's complaints about the quality of the food and lack of fresh vegetables do not establish an Eighth Amendment violation. "Prisoners have a right to adequate food, but not to food that is tasty or even appetizing." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004) (citations omitted) (collecting cases). In his reply brief, Mr. Justise claims that "he has a reaction to soy" that causes weight gain and therefore seeks alternate meals. ECF 26 at 7-8. However, Mr. Justise was allowed to proceed on a diet-related claim for injunctive relief only as far as he was in imminent danger of serious injury as related to his diabetes. ECF 5 at 1. These potential soy issues were not raised in the preliminary injunction motion; and, even if they had been, they go beyond the scope of what he is pursuing in this case.

Mr. Justise hasn't demonstrated a likelihood of success on the merits or irreparable harm on this record. For these reasons, the court DENIES the motion for preliminary injunction (ECF 2).

SO ORDERED.

January 13, 2021                                       *s/ Damon R. Leichty*
                                                       Judge, United States District Court